UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
LIUZHE LI,

                    Plaintiff,                      Dkt No.: 25-CV-9765

          -against-                           **COMPLAINT**

DOUGLAS A. COLLINS, SECRETARY, U.S.
DEPARTMENT OF VETERANS AFFAIRS,

                    Defendant.
---------------------------------------------------------------------X

       Plaintiff, LIUZHI LI, by and through her attorneys, RICOTTA & MARKS, P.C., complaining of Defendant herein, alleges, upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1.      This action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, *et seq.*; and any other cause of action which can be inferred from the facts set forth herein.

2.      The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, the doctrine of pendant jurisdiction and the aforementioned statutory and constitutional provisions.

3.      Venue is proper pursuant to 28 U.S.C. § 1391.

4.      All conditions precedent to maintaining this action have been fulfilled.  Moreover, a charge of discrimination was filed with the Equal Employment Opportunity

Commission ("EEOC").  A right to sue letter was issued on August 28, 2025. This action was properly instituted within ninety (90) days of the issuance of said letter.

## PARTIES

5.     At all relevant times mentioned, Plaintiff Liuzhe Li ("Li") was a resident of the County of Queens, State of New York during the applicable time period referenced below.

6.     Defendant, Douglas A. Collins, was and still is the Secretary of the United States Department of Veterans Affairs ("the VA"), under which the VA New York Harbor Healthcare operates, which has a principal place of business at 423 E. 23rd Street, New York, New York 10010.

## FACTS

7.     Liuzhe Li ("Li") is a Chinese woman.

8.     In or about September 2019, Li began her employment with VA New York Harbor Healthcare ("the VA"), as a Supervisory Histotechnologist, Series 0601, Grade GS12.

9.     Li's job description for a Supervisory Histopathology Technologist, Grade GS12, states: "The incumbent serves as a first-line Supervisory Histopathology Technologist in the Histology, Cytology, Immunohistochemistry, Autopsy, and

Electron Microscopic (EM) sections of the laboratory with responsibility for technical and administrative supervision.   The incumbent ensures compliance with the accrediting agency and regulatory requirements, establishes, and monitors the quality of the pre-analytical processes as part of the overall laboratory quality management program, and initiates corrective action.   This position is located at the New York Harbor Healthcare System." Additionally, the VA assigned Li to be Harbor Supervisor which supervises both the New York campus and the Brooklyn Campus, and while she mostly worked out of the Manhattan site, the VA staffed Li at the Brooklyn office once every two weeks.

10.    Supervisory authority includes authority over the entire lab including staff ranked at different levels.   Supervisors, such as Li have the authority to assign work to subordinates in the lab, to review subordinates' work, to set the schedule for the lab, to issue annual performance appraisals to subordinates, and to discipline subordinates.

11.    Li's department consisted of employees including but not limited to: Mwenya Sampa (Black female), Gregg Cabalquinto (Filipino male), Teresita De Los Santos (Hispanic female), and Issa Eid (Middle Eastern male).

12.    All four of these individuals were supervisors who, despite holding a lower title and rank to Li, were vested with supervisory authority to take care of the entire lab, including staff administration.

3

13.    Li, however, was denied the ability to supervise and oversee the entire lab, including staff administration, despite the fact that she held a higher title, and despite the fact that her job description includes overall monitoring and supervision of laboratory quality management programs as well as the ability to initiate corrective actions, where necessary.    In short, Li was the only individual who held a Supervisory title that was not permitted to exercise that supervisory authority and/or perform those supervisory tasks, while her similarly situated coworkers, outside of her protected class(es), and who held lesser GS ranks than her, were allowed to perform this work.

14.    While Li's position was to have supervisory authority as Supervisory Histotechnologist, (and was supposed to be the Supervisor of the Histology, Cytology, UHC, EM, and Autopsy sections), the VA refused to allow her to exercise any supervisory authority, and instead vested that authority in her coworkers, outside of her protected class, who were lower GS ranks than her.

15.    Instead, the VA assigned Li ministerial work and work that was beneath her job title and GS rank.  For example, on or about January 27, 2024, Dr. Zhiheng Pei ("Pei"), Associate Chief of PLMS, began assigning Li secretarial duties.  Pei assigned Li to send out and follow up on pathology cases for him, and to upload the report as well.   These tasks were normally the responsibility of the Administrative Assistant, (who is the Secretary of the Chief) and Pei attempted to assign these tasks to Li on a permanent basis.   Moreover, these duties were outside

4

the scope of her job description, and her similarly situated coworkers, identified above, were not similarly required to perform such ministerial tasks.

16.    At the time Pei assigned this work to Li, Li was working full time with bench work. Bench work consists of work that technologists, and not supervisors usually do, including, performing specific work and tests, including, Histology, (embedding, cutting, staining, frozen sectioning, specimen grossing) IHC testing, (running and staining), and Electron Microscope (frozen sectioning, DIF, embedding, cutting, staining, specimen processing, and picture taking).   Li explained to Pei that she was unable to accept these new tasks on top of her full-time bench and other administrative work (including, but not limited to CAP self-inspection, IHC quality control, and EM work) and the supervisory work she was supposed to be performing, despite the VA preventing her from doing so.

17.    Moreover, while Li was supposed to have supervisory authority, the VA refused to acknowledge this authority, while treating Arnaldo Polano ("Polano"), a GS7 Technician, who was male and not Chinese, as Supervisor over Li, despite her having a higher title and GS level.   More specifically, Polano had the authority to supervise subordinates and assign work.   Additionally, Polano had the authority to review his subordinates' work, set schedules, issue performance evaluations, and discipline employees.   Meanwhile, the VA did not permit Li to perform such duties.

18.    The VA assigned the majority of the staff at the VA's Manhattan campuses to be

5

supervised by Polano rather than Li.   Additionally, Polano, who was a GS7 and held a lower position than Li, who was a GS12, was assigned the supervisor's office, and while Li was not assigned her own office.

19.    Moreover, despite being a lower title and GS level than Li, the VA had Polano assign Li her job tasks.  Li's similarly situated coworkers who were not female and/or Chinese were not similarly required to report to and be supervised by a subordinate.

20.    From in or about October 2023 through in or about January 2024, Li regularly complained to Vera Aristedes ("Aristedes"), Manager, that she was being subjected to discrimination on the basis of her gender and/or national origin in light of the denial of her ability to perform supervisory tasks within the scope of her job duties, in favor of Polano.   Li complained that she has less supervisory responsibilities than Polano, her subordinate.   Li also complained that she did not have supervisory authority to assign work to subordinates, meanwhile Polano (who should be her subordinate) assigned her work.   Additionally, Li complained that subordinates were confused about who was in charge between her and Polano.   As a result of this confusion, the VA forced Li to do more bench work.

21.    Aristedes replied to Li, merely stating that she was a supervisor and Polano was not, effectively confirming the discriminatory treatment to which Li was being subjected.   Nonetheless, in practice, the VA continued to vest Polano with Li's supervisory authority and required Li to report to her subordinate, Polano.

22.     On or about February 4, 2024, in retaliation for her complaints of discrimination, Aristedes informed Li that she would be transferred permanently to the Brooklyn office.  This transfer would have been adverse to Li as it would increase her commute time, dramatically.

23.     Upon information and belief, the VA did not attempt to transfer Li's similarly situated colleagues outside her protected classes and/or her coworkers who did not complain about discrimination.

24.     Notwithstanding Li objecting to this retaliatory transfer, on February 21, 2024, the VA informed Li that on February 26, 2024, she would be transferred from the VA's Manhattan office to its Brooklyn office, which was a less convenient assignment for Li.

25.     In or about February 2024, Li continued to complain to Pei, Lee, Villagomez, and Timothy Graham ("Graham"), Hospital Director, about the discrimination to which she was being subjected, including the VA allowing Polano supervisory authority to supervise subordinates and assign work, while assigning Li bench work, as well as the transfer constituting an act of discrimination and/or retaliation.

26.     She also repeatedly lodged complaints that the VA vested Polano with her supervisory responsibilities and required her to report to him despite the fact that

7

he was ranked as a GS7, while Li had and has GS12 ranking.

27.    On or about March 12, 2024, Li filed an EEO complaint alleging that the VA subjected her to discrimination based on race and gender as well as retaliation for her protected activity.

28.    In retaliation for filing her EEO complaint, Lee began to treat Li in a more hostile manner than prior to her complaints, demanding that Li complete assignments faster and in an abbreviated time frame he knew was unrealistic, while not subjecting her similarly situated coworkers who had not complained to these new, unrealistic deadlines.

29.    For example, Lee ordered Li to remove a chemical station for Manning.  Lee normally did not assign such tasks to employees with supervisory authority like Li. However, Lee ordered Li to remove the chemical station within forty-eight (48) hours, which was unrealistic, as such a task typically takes much longer.

30.    Moreover, subsequent to her complaints of discrimination, Manning's behavior toward Li changed and became more hostile, with Manning frequently yelling at Li while not speaking in the same hostile manner to her coworkers who had not engaged in protected activities.

31.    Moreover, Lee began falsely accusing Li of lying about work assignments and falsely claimed that Li's work quality was poor.  Notably, Lee never voiced such

critiques of Li's veracity and/or her work quality prior to her complaints of discrimination.

32.    On or about November 18, 2024, Lee falsely accused Li of lying about contacting Dr. Deng to set up a mock inspection.  On another occasion, Lee also falsely accused Li of taking vacation without informing him.  These persistent false allegations levied against Li began only after her complaints of discrimination and were clearly done in retaliation for her complaints of discrimination.

33.    In or around September 2025, Li was called into a meeting with the newly appointed Chief of Staff (name unknown).  Li again complained about the discrimination and retaliation to which she was being subjected.  However, Li's concerns were and continue to be ignored, and she continues to be subjected to the discrimination and retaliation outlined herein.

34.    As a result of the foregoing, Li has suffered financial damages, future damages, as well as severe physical and emotional distress damages.

## CLAIMS FOR RELIEF

35.    Plaintiff has been subjected to a hostile work environment, and/or adverse employment actions, as well as an atmosphere of adverse employment actions based on her national origin, gender, and/or in retaliation for his opposition to

discriminatory practices.   Defendant the VA's actions are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, et seq.

36.     By reason of Defendant's violation of Plaintiff's rights, Plaintiff has suffered a loss of monetary benefits associated with her employment, in addition to suffering physical, emotional and other damages.


WHEREFORE, Plaintiff demands judgment against Defendant for all compensatory, emotional, physical, lost pay, front pay, injunctive relief, punitive damages (where permissible) and any other damages permitted by law.   It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.   Plaintiff demands a trial by jury.

Dated: Seaford, New York
       November 24, 2025

RICOTTA & MARKS, P.C.
*Attorneys for Plaintiff*
2174 Jackson Ave.
Seaford, New York 11783
(347) 464-8694

Matthew Marks, ESQ.